UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CRAIG K. GARRETT,<br><br>Petitioner,<br><br>v.<br><br>R.C. JOHNSON, Warden,<br><br>Respondent. | Case No. 2:20-cv-00059-AB-KES<br><br>ORDER TO SHOW CAUSE WHY HABEAS PETITION SHOULD NOT BE DISMISSED AS SUCCESSIVE |

## I.

## INTRODUCTION

In January 2020, Petitioner Craig K. Garrett ("Petitioner") filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254. (Dkt. 1 ["Petition"].) The Petition purports to challenge Petitioner's 1991 conviction for second degree attempted robbery. (Id. at 2.) In the supporting facts, however, Petitioner discusses his arrest on March 10, 2011, for burglary, and the subsequent trial testimony of Detective Linares. (Id. at 5, 9.) These facts relate to his October 2011 burglary conviction. See People v. Garrett, No. YA080544 (Cal. Super. Oct. 25, 2011).

1

## II.

## FACTUAL BACKGROUND

The underlying, italicized facts are taken from the unpublished California Court of Appeal decision on Petitioner's direct appeal. People v. Garrett, No. B239107, 2012 WL 6686092, 2012 Cal. App. Unpub. LEXIS 9390 (Dec. 26, 2012). Unless rebutted by clear and convincing evidence, these facts may be presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254(e)(1).

*Prosecution Case*

*John Park lived across the street from Joseph Robinson on West 159th Street in the City of Gardena. On March 10, 2011, at approximately 12:30 p.m. Park looked through his bedroom window and saw [Petitioner] walk up to Robinson's house, open the security screen and knock on the front door. [Petitioner] knocked on the door for a while before moving to the big glass window in the front of the house. [Petitioner] looked through Robinson's front window into the house and then went back and knocked on the screen door. No one answered the door and [Petitioner] crouched down and sat by the wall at the front of the house. Park's view of [Petitioner] was then obscured by a bush at the front of the house.*

*After a few minutes [Petitioner] got up and looked in the window again. He then walked to the end of the porch, looked around, and started doing pull ups from a beam attached to the house. He suddenly "hiked his leg" over a fence next to the porch and entered Robinson's backyard. [Petitioner] went towards the back door of Robinson's house and disappeared from Park's view. Park called 9-1-1 and went outside to his porch when he saw the police arrive. Park saw [Petitioner] walk towards the front of the yard from the garage area at the back. Park yelled and pointed at [Petitioner] who ran towards the back of the pool when he saw Park. [Petitioner] was wearing brown plaid shorts. Police set up a perimeter around the area and attempted to locate [Petitioner].*

*Gardena Police Officer Nick Beerling responded to the burglary call. He received information that [Petitioner] was seen running in an alley behind West 159th Street, approximately 300 yards west of the Robinson residence. [Petitioner] ran towards Officer Beerling, made a sharp turn and ran towards an apartment complex. He was wearing a white tank top, gray shirt, and brown plaid checkered shorts. Officer Beerling broadcast his location and remained at the entrance of the apartment complex for a few minutes until he was asked to respond to another location.*

*At approximately 1:00 p.m. Angelica Hernandez, who lived on West 159th Street, heard police sirens and her dog began barking. She looked outside and saw [Petitioner] pulling clothes out of her car parked in the driveway. Hernandez ran outside and asked [Petitioner] what he was doing on her property. Appellant dropped the clothes and ran through the back of the property.*

*Gardena Police Department Detective Ixtzia Linares saw [Petitioner] on the roof of a residence on the corner of Normandie and West 159th Street. He was wearing a white tank top with brown plaid shorts. [Petitioner] ignored verbal commands from police officers to come down from the roof. After further unsuccessful attempts to convince [Petitioner] to climb down from the roof, Gardena Police Department Detective Luis Villanueva fired a rubber bullet which struck [Petitioner] in the chest. [Petitioner] was arrested and taken into custody. Redondo Beach Police Officer Corey King and his K-9 dog assisted in searching the area. He found a gray T-shirt in the driveway of the adjacent property which was booked into evidence.*

*On March 11, 2011, Detective Linares and other police officers met Robert Bailey at the Robinson residence. Bailey was Robinson's neighbor and had been taking care of the house for approximately a year while Robinson was in the hospital. Detective Linares noticed a screen missing from the living room window at the back of the house. The screen was not missing when Bailey inspected the*

*house on March 9, the day before the incident. The screen was found at the bottom of Robinson's pool and had been cut. Bailey had installed new screens for the entire house six months earlier. Detective Linares, who had been trained in lifting prints, lifted a palm print from the window where the screen had been removed and booked it into evidence.*

*Kimberly Swobodzinski, a trained and experienced forensic technician with the Gardena Police Department, compared [Petitioner]'s booking fingerprint and palm print impression with the prints lifted by Detective Linares at the scene. The prints matched.*

*Defense Case*

*Gardena Police Officer Yvette Evans responded to the 9-1-1 call regarding a burglary on West 159th Street on March 10, 2011. She stopped at the Robinson residence and "did a quick visual of the house." She testified that she did not notice anything unusual. She checked the garage and the west and south sides of the house but did not check all of the back of the house.*

## III.

## CLAIMS

Petitioner contends that he is entitled to relief under California Senate Bill 1134, enacted into law in 2016, because he has new evidence of prosecutorial misconduct. (Dkt. 1 at 5, 10.) He contends that his due process rights under the Fifth and Fourteenth Amendments were violated. (Id. at 5.)

He contends that the prosecutor knowingly presented false evidence at his trial, i.e., Detective Linares's testimony that he found a damaged screen in the pool. (Id. at 9.) Petitioner contends that this testimony was false because (1) Linares was not actually a detective, and only a detective could do an independent, follow-up investigation, and (2) Detective Reynaga wrote the police report describing the events on March 11, 2011, and in that report, *he* claimed to have conducted the follow-up investigation that discovered the screen. (Id.)

4

# IV.
# DISCUSSION

**A.** **Applicable Law.**

The Petition now pending is governed by 28 U.S.C. § 2244(b), which provides in relevant part as follows:

> (b)(1) A claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed.
>
> (2) A claim presented in a second or successive habeas corpus application under section 2254 that was not presented in a prior application shall be dismissed unless--
>
> > (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> >
> > (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
> >
> > (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.
>
> (3)(A) <u>Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.</u>

28 U.S.C. § 2244(b) (emphasis added).

Thus, if a California petitioner wishes to file a second federal habeas petition

based on new law or newly discovered facts, the petitioner must first ask the Ninth Circuit for permission to do so. Without such authorization, the District Court lacks jurisdiction to entertain the successive petition. Cooper v. Calderon, 274 F.3d 1270, 1274 (9th Cir. 2001), cert. denied, 538 U.S. 984 (2003).

**B.     Analysis.**

Petitioner previously filed a § 2254 petition challenging his 2011 conviction. See Garrett v. Gastelo, No. 2:13-cv-05640-AB-LAL, 2016 WL 4445772, 2016 U.S. Dist. LEXIS 111744 (C.D. Cal. April 27, 2016) ("Garrett I"). Petitioner alleged prosecutorial misconduct, claiming "false evidence related to Detective Reynaga's claim that he had been at the scene on March 11, 2011 conducting follow up investigation." (Garrett I, Dkt. 75 at 25.) Regarding that claim, the Court determined, "Petitioner has proven nothing but an immaterial discrepancy in the dispatch log. Officer Ixtzia Linares, Officer Nick Beerling, witness Robert Bailey, and Detective Reynaga all testified that the detective went to the crime scene the day after the crime to conduct further investigation." (Id. at 26, citing Reporter's Transcript.) Garrett I was dismissed on the merits, and the Ninth Circuit denied a certificate of appealability. (Garrett I, Dkts. 79, 85.)

The Petition now pending appears to be a successive petition challenging the same conviction as Petitioner's prior habeas petition in Garrett I. Thus, it was incumbent on Petitioner under § 2244(b)(3)(A) to secure an order from the Ninth Circuit authorizing the District Court to consider his new claims prior to filing the instant Petition. Petitioner's failure to secure an order from the Ninth Circuit deprives this Court of subject matter jurisdiction.

IT IS THEREFORE ORDERED that **on or before February 7, 2020**, Petitioner shall show cause in writing, if any he has, why the Petition should not be dismissed without prejudice as successive. Petitioner may respond to this order by (1) explaining why the instant Petition does not challenge the same conviction as

Garrett I, or (2) voluntarily dismissing the instant Petition and filing a request with the Ninth Circuit to file a successive § 2254 petition.

DATED: January 14, 2020

_____
KAREN E. SCOTT
United States Magistrate Judge